UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:12-CR-00027-1-JRG-DHI |
| | ) | |
| KAREEM HUSSAN WOOD | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Kareem Hussan Wood's Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [Doc. 60], the United States' Response in Opposition [Doc. 63], and Mr. Wood's Reply [Doc. 66]. For the reasons herein, the Court will deny Mr. Wood's motion.

### I. BACKGROUND

In 2012, Mr. Wood pleaded guilty to distributing a quantity of a mixture or substance containing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [Plea Agreement, Doc. 24, at 1; Minute Entry, Doc. 29]. At sentencing, Mr. Wood was a career offender under USSG § 4B1.1(b), [PSR ¶¶ 24, 31, 35, 37, 40, 46 (on file with the Court)], with a total offense level of 31 and a criminal history category of VI, [Statement of Reasons at 1 (on file with the Court)]. His guidelines range was 188 to 235 months' imprisonment, [*id.*], and the Court sentenced him to a guidelines-range sentence of 188 months, [J., Doc. 38, at 2]. He is serving his sentence at FMC Devens and is scheduled for release in November 2025.

Acting pro se, Mr. Wood, who is forty-three years of age, now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on extraordinary and compelling circumstances. According to Mr. Wood, "[h]is extraordinary and compelling reasons are two-fold, 1) that he was enhanced as a criminal offender, based on his criminal history" and

"2) . . . that the current situation at Fort Devens is grave, as COVID-19 has taken control of the prison." [Def.'s Mot. at 1–2]. In response, the United States opposes Mr. Wood's motion, arguing that he has failed to identify an extraordinary and compelling reason for his release and that his release would be inconsistent with 18 U.S.C. § 3553(a)'s factors. [United States' Resp. at 8–13]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Mr. Wood's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering

> the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States acknowledges that Mr. Wood has satisfied § 3582(c)(1)(A)'s exhaustion requirement. [United States' Resp. at 1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> > (A) Medical Condition of the Defendant.—
> > > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic

4

> > solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > > (II) suffering from a serious functional or cognitive impairment, or
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> > (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> > (C) Family Circumstances.—
> >
> > > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> > > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> > (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling

5

circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file

6

their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, ___ F.3d ___, 2021 WL 345405, at *1, 2 (6th Cir. Feb. 2, 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the

7

Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and exercise its discretion in determining whether Mr. Wood has identified an extraordinary and compelling reason for his release. Following the Sixth Circuit's decision in *Jones*, some district courts, in deciding whether extraordinary and compelling reasons exist for a defendant's release, have crafted a two-part test: (1) whether the defendant is at high risk of developing serious complications from COVID-19 and (2) whether the facility where the defendant resides is experiencing a severe outbreak of COVID-19. *United States v. Howell*, No. 1:19-cr-242, 2020 WL 6876124, at *1 (N.D. Ohio, Nov. 23, 2020); *see United States v. Black*, No. 17-20656, 2020 WL 7021696, at *3 (E.D. Mich. Nov. 30, 2020) ("Post-*Jones*, these remain appropriate considerations."). The Sixth Circuit has held that district courts do not abuse their discretion when relying on this two-part test. *United States v. Elias*, 984 F.3d 516, 521 & 521 n.1 (6th Cir. 2021). For the purpose of reviewing Mr. Wood's motion, the Court will adopt this test.

Under the first part of the test—i.e., whether Mr. Wood is at high risk of developing serious complications from COVID-19—Mr. Wood does not, as the United States argues, state that he suffers from an underlying medical condition that would put him at high risk. In prior motions that Mr. Wood filed with the Court, he has claimed he has "borderline hypertension" and that this condition places him at heightened risk of severe illness from COVID-19. [Def.'s First Mot., Doc. 45, at 1]. The Court rejected this argument, relying on the Center of Disease Control's guidelines. [Mem. Op. & Order, Doc. 48, at 1– 4]; *see* Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/

8

2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 15, 2021). Now Mr. Wood contends that "[i]t does not matter that [his] underlying medical condition, 'borderline hypertension' is not on the CDC list of underlying conditions" and "what matters is his exposure to the virus, because it has been proven that many healthy individuals, without underlying conditions, who become infected with the virus experienced the fatal effect the virus could cause." [Def.'s Mot. at 15].[1]

The Court disagrees with this contention for two reasons. First, as the Sixth Circuit has noted, "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Elias*, 984 F.3d at 521 (citation omitted); *see id.* ("Here, the district court properly considered the CDC guidance that was in effect at the time, which did not include hypertension."). Second, "compassionate release due to a medical condition is an extraordinary and rare event," *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (quotation omitted)), and Mr. Wood's generalized fear of COVID-19 cannot justify compassionate release, *see United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) ("Courts have been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason." (citation omitted)).

---

[1] Mr. Wood also argues—for the first time in his reply brief, *see Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived.")—that he "is a former smoker and as a result he is more susceptible to contracting the virus," [Def.'s Reply at 2]. Consistent with the PSR, his medical records state that he was a former smoker of marijuana. [Def.'s Med. Records, Doc. 56, at 6]. Although the CDC does recognize that "smoking" is likely to put an individual at a heightened risk of severe illness from COVID-19, the CDC is referring to "cigarette smok[ing]," not marijuana, Ctrs. for Disease Control & Prevention, *Smoking*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking (last updated Mar. 15, 2021). Mr. Wood provides the Court with no medical documentation showing that he is or was a cigarette smoker, leaving the Court unable to conclude that he meets the CDC's guidelines. *See Elias*, 984 F.3d at 520–21 ("[W]e note that [the defendant] did not provide any records in her motion to support that she has hypertension. The district court could have denied [her] motion for compassionate release on this basis." (citations omitted)).

9

And under the second part of the two-part test, COVID-19, contrary to Mr. Wood's assertion otherwise, has not "taken control of" FMC Devens. [Def.'s Mot. at 2]. The Bureau of Prisons reports only one active cases of COVID-19 among the inmates at FMC Devens and zero active cases among the staff. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop. gov/coronavirus/ (last updated Mar. 23, 2021). These numbers are low in comparison to other federal facilities throughout the country. For example, USP Florence-High has forty-eight active infections among its inmates and twenty-seven active infections among its staff. *Id.*

With the small number of infections at FMC Devens, Mr. Wood's assertion that "FMC Devens is devastated with COVID-19 infections" amounts at worst to an untrue statement and at best a generalized fear of the virus. [Def.'s Mot. at 15]; *see Bothra*, 2020 WL 2611545 at *2; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *United States v. Sabot*, No. 2:14-cr-39, 2020 WL 6274983, at *4 (W.D. Pa. Oct. 26, 2020) ("[The defendant] . . . has not demonstrated a more than speculative risk of exposure at FCC Petersburg and becoming seriously ill."); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)). In sum, Mr. Wood does not meet the two-part test and therefore is without an extraordinary and compelling reason for his release.

Lastly, the Court must briefly address Mr. Wood's final argument—his argument that he is entitled to compassionate release because "he was enhanced as a criminal offender, based on his criminal history." [Def.'s Mot. at 1]. In making this argument, "Mr. Wood is asking that the court consider[] his increased sentencing due to his career offender status." [Def.'s Mot. at 13].

10

"If [he] were not sentenced as a career offender," he says, "he would be subject to a guideline sentencing range offense level 12, CH V resulting in a sentence of 27–33 months." [*Id.*]. In response, the United States correctly argues that Mr. Wood was "properly classified as a career offender," [United States' Resp. at 10]; indeed, Mr. Wood, at sentencing, filed a notice of no objections to the presentence investigation report, in which he received his designation as a career offender, [Def.'s Notice of No Objs., Doc. 34, at 1]. Mr. Wood cites no legal basis for the abrogation of his career-offender status, though he does mention the First Step Act, under which, he says, "his prior offenses are no longer determined to be serious offenses or serious violent offenses." [Def.'s Mot. at 13]. In response, the United States argues that the First Step Act does not apply retroactively to Mr. Wood. [United States' Resp. at 11]. The United States is, again, correct.

The First Step Act authorizes courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222. "[T]he First Step Act," however, "is largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of [the] date of enactment.'" *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019) (quoting § 404(c), 132 Stat. at 5221); *see* § 401(c), 132 Stat. at 5221 (providing that the First Step Act applies only "if a sentence for the offense has not been imposed as of such date of enactment"). In other words, because the First Step Act's effective date is December 21, 2018, it "cannot benefit" defendants who were "sentenced prior to [that] effective date." *Wiseman*, 932 F.3d at 417. The Court sentenced Mr. Wood in 2013—well before the First Step Act's effective date— so even if the First Step Act does provide him with an extraordinary and compelling reason for release, he does not qualify for it. *See United States v. Hatcher*, No. 3:05-CR-113, 2020 WL

11

7061749, at *4 (E.D. Tenn. Dec. 2, 2020) ("Section 401 applies only to persons who had not yet been sentenced as of December 21, 2018. The instant defendant was sentenced in 2012, more than six years before the First Step Act became law. Section 401 of the First Step Act therefore does not apply to him[.]" (citation omitted)); *see also United States v. Cisneros*, CR. NO. 99-00107 SOM, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020) ("[T]his court hesitates to conclude that it should reduce [the defendant's] sentence solely on the ground that the change in the law constitutes an extraordinary and compelling circumstance. Otherwise, every inmate who might receive a reduced sentence today would be eligible for compassionate release, and Congress's decision not to make the First Step Act retroactive would be meaningless."). In sum, because Mr. Wood has failed to identify an extraordinary and compelling reason for his release under § 3582(c)(1)(A), the Court's analysis is at an end, and Mr. Wood is not entitled to compassionate release. *See Elias*, 984 F.3d at 519 (stating that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" (citations omitted)).

### III. CONCLUSION

The Court sympathizes with Mr. Wood's concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release. His Emergency Motion for Compassionate Release [Doc. 60] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
