UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:12-CR-00027-1-JRG-DHI |
| | ) |
| KAREEM HUSSAN WOOD | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Kareem Hussan Wood's Pro Se Motion for Reconsideration [Doc. 69] and the United States' Response in Opposition [Doc. 73]. For the reasons herein, the Court will deny Mr. Wood's motion.

### I. BACKGROUND

In 2012, Mr. Wood pleaded guilty to distributing a quantity of a mixture or substance containing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [Plea Agreement, Doc. 24, at 1; Minute Entry, Doc. 29]. At sentencing, Mr. Wood was a career offender under USSG § 4B1.1(b), [PSR ¶¶ 24, 31, 35, 37, 40, 46 (on file with the Court)],[1] with a total offense level of 31 and a criminal history category of VI, [Statement of Reasons at 1 (on file with the Court)]. His guidelines range was 188 months to 235 months' imprisonment, [*id.*], and the Court sentenced him to a guidelines-range sentence of 188 months, [J., Doc. 38, at 2]. He is serving his sentence at FMC Devens and is scheduled for release in November 2025.

Acting pro se, Mr. Wood, who is forty-three years of age, moved the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on extraordinary and compelling circumstances. According to Mr. Wood, "[h]is extraordinary and compelling reasons [were]

---

[1] The United States filed an information under 21 U.S.C. § 851(a)(1), giving notice of its intent to rely on prior felony drug offenses to seek increased punishment. [Information, Doc. 23, at 1].

1

two-fold, 1) that he was enhanced as a criminal offender, based on his criminal history" and "2) . . . that the current situation at Fort Devens is grave, as COVID-19 has taken control of the prison." [Def.'s Mot. Compassionate Release, Doc. 60, at 1–2]. As to his first argument, he "ask[ed] that the court consider[] his increased sentencing due to his career offender status," contending that "[i]f [he] were not sentenced as a career offender," his guidelines range would have been lower. [*Id.* at 13]. Although he cited no legal basis for the annulment of his career-offender status,[2] he did mention the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194, under which he claimed his "prior offenses are no longer determined to be serious drug offenses or serious violent offenses." [*Id.*].

The Court, however, noted that "the First Step Act is largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of [the] date of enactment.'" [Mem. Op. & Order, Doc. 68, at 11 (quoting *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019))]; *see* § 401(c), 132 Stat. at 5221 (stating that the First Step Act applies only "if a sentence for the offense has not been imposed as of such date of enactment"). Even assuming that the First Step Act could constitute an extraordinary and compelling reason for a defendant's compassionate release under § 3582(c)(1)(A), the Court ruled that Mr. Wood did not qualify for it because it sentenced him in 2013—well before the First Step Act's effective date. [Mem. Op. & Order at 11–12].

As to Mr. Wood's second argument, the Court applied a two-part test in determining whether Mr. Wood had identified an extraordinary and compelling reason for his release: (1) whether he was at high risk of developing serious complications from COVID-19 and (2) whether the facility where he is incarcerated is experiencing a severe outbreak of COVID-19. [*Id.* at 8].

---

[2] At sentencing, Mr. Wood filed a notice of no objections to the presentence investigation report, in which he received his designation as a career offender under USSG § 4B1.1(b). [Def.'s Notice of No Objs., Doc. 34, at 1].

2

Mr. Wood satisfied neither part of the two-part test. First, although he claimed that he suffered from "borderline hypertension," the Court, citing the Center for Disease Control's guidelines, concluded that this condition did not put him at heightened risk of severe illness from COVID-19. [*Id.* at 8–9]. Second, the Court pointed out that FMC Devens had only one active case of COVID-19 at the time, and it noted that Mr. Wood's assertion that "'FMC Devens is devastated with COVID-19 infections' amounts at worst to an untrue statement and at best a generalized fear of the virus." [*Id.* at 10]. Mr. Wood now moves for reconsideration of the Court's decision.

## II. LEGAL STANDARD

Although no specific rule allows for motions for reconsideration in criminal cases, courts ordinarily review these motions "under the same standards that govern a civil motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)." *United States v. Reynolds*, No. 3:08-cr-143, 2018 WL 1950433, at *1 (E.D. Tenn. Apr. 24, 2018) (citation omitted). Rule 59(e) states that a party may file a motion to alter or amend judgment within twenty-eight days from the entry of judgment, and it permits a court to alter judgment based on "(1) a clear error in law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quotation omitted). A district court has "considerable discretion" in deciding whether to grant a motion under Rule 59(e). *Id.* (citation omitted).

A motion under Rule 59(e), however, "run[s] contrary" to notions of "finality and repose" and is therefore "generally discouraged" and "afford[s] relief only under extraordinary circumstances." *Polzin v. Barna & Co.*, No. 3:07-cv-127, 2007 WL 4365760, at *3 (E.D. Tenn. Dec. 11, 2007). In this vein, "parties should not use [Rule 59(e)] to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa*

3

*Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation and quotation omitted); *see U.S. ex rel. Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 179 F.R.D. 541, 547 n.9 (S.D. Ohio 1998) ("If the movant simply . . . presents arguments which originally could have been argued, then the movant's proper recourse is an appeal to the circuit court." (citations omitted)).

### III. SECTION 3582(C)(1)(A)

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,
   (II) suffering from a serious functional or cognitive impairment, or
   (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

>  (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>  (C) Family Circumstances.—
>>  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds

7

for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

## IV. ANALYSIS

In moving for reconsideration, Mr. Wood argues that the Court erred because it "focused primarily on the COVID-19 pandemic and whether [he] had underlying conditions identified by the CDC." [Def.'s Mot. Recons. at 5]. According to Mr. Wood, the Court "did not analyze all of

8

[his] reasons why his situation is 'extraordinary and compelling.'" [*Id.*]. Specifically, he asserts that the Court "did not recognize" his good behavior and rehabilitative efforts while in prison, though he acknowledges that "rehabilitation alone does not warrant a reduction in a sentence." [*Id.* at 4]; *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). [*Id.*]. And more generally, the Court should have, in Mr. Wood's view, exercised its discretion under § 3582(c)(1)(A) more broadly when ruling on his motion. [*Id.*]. The Court will now address Mr. Wood's arguments.

### 1. Mr. Wood's Rehabilitative Efforts

Throughout his motion for reconsideration, Mr. Wood underscores the Court's "broad discretion" to define "extraordinary and compelling circumstances" as it deems fit. [*Id.* at 4, 7]. During the COVID-19 pandemic, the Court has ruled on dozens if not hundreds of motions for compassionate release under § 3582(c)(1)(a), and in its discretion, its practice has been to address a defendant's rehabilitative efforts not when determining whether extraordinary and compelling reasons exist but when analyzing § 3553(a)'s factors—a leg of the analysis that, if necessary, comes later. *See Jones* 980 F.3d at 1101 ("[D]istrict courts must 'find' both that 'extraordinary and compelling reasons warrant [a sentence] reduction' and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' *before* considering all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." (footnote omitted) (emphasis added));

But in Mr. Wood's case, the Court had no need to address his rehabilitative efforts—or any of the factors under § 3553(a)—because it determined that extraordinary and compelling reasons for his release were not present. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (stating that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others"

9

(citations omitted)); *United States v. Hoeltzel*, No. 18-20111, 2021 WL 364634, at *3 (E.D. Mich. Feb. 3, 2021) ("There is no need to engage in the 3553(a) analysis, however, where extraordinary and compelling circumstances are not present." (citing *id.*)).

Mr. Wood cites no binding precedent showing that the Court was without discretion to reserve a review of his rehabilitative efforts until it reached an analysis of § 3553(a)'s factors—which, in Mr. Wood's case, it had no need to reach. *See Ruffin*, 978 F.3d at 1009 ("[T]he court reasonably concluded that [the defendant's] rehabilitation efforts, *when considered alongside the other § 3553(a) factors*, did not warrant any greater reduction of his already below-guidelines sentence." (emphasis added)); *United States v. Hayes*, No. 3:16-CR-01, 2021 WL 932021, at *3 (E.D. Tenn. Mar. 11, 2021) ("[T]his Court considers disciplinary records and rehabilitative efforts to be highly relevant to a discussion of the 3553(a) factors[.]"); *United States v. Young*, 458 F. Supp. 3d 838, 849 (M.D. Tenn. 2020) ("[T]he question of rehabilitation is more appropriately considered . . . under § 3553[.]").

Besides, good behavior, while certainly commendable, is expected of federal inmates. *See United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("These admirable efforts will likely serve [the defendant] both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *cf. United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (stating that a defendant's re-assimilation into pre-incarceration life is "commendable," but it is "expected of a person on supervised release and do[es] not constitute the 'exceptional behavior' contemplated in the precedents"). Mr. Wood has therefore failed to establish that the Court, in

not reaching an analysis of his rehabilitative efforts under § 3553(a), committed a clear error entitling him to reconsideration.

2. *The Court's Reasoning*

Next, Mr. Wood complains that the Court "limited its reasoning for finding a lack of extraordinary and compelling reasons based on [his] not having an underlying medical condition identified by the CDC." [Def.'s Mot. Recons. at 2]. According to Mr. Wood, the Court should have considered his rehabilitative efforts, the fact that he has served most of his sentence,[3] and the "harsh nature of sentences imposed on low level drug offenders" vis-à-vis the benefits that the First Step Act would accord to him if he had been sentenced today. [*Id.* at 4–6]. In this vein, he urges the Court to "consider[] his motion more broadly as the court did in *United Sates* [sic] *v. Young*, 458 F. Supp. 3d 838 (M.D. TN 2020)." [*Id.* at 2].

In *Young*, the district court granted a defendant's motion for compassionate release based on a confluence of factors. First, the defendant had been sentenced to over ninety-two years' imprisonment under the sentence-stacking provision of 18 U.S.C. § 924(c), a provision that the First Step Act mitigates for certain defendants who face sentencing under § 924(c) today. *Young*, 458 F. Supp. 3d at 840, 846–48. Second, the district court noted that the defendant was seventy-two years old and suffered from various health problems, including chronic kidney disease and abdominal distress, which had caused him to lose significant weight. *Id.* at 848. Third, the district court acknowledged his "model" record while incarcerated, *id.* at 840, though it declined to base its decision on his rehabilitative efforts because they were more appropriate for consideration

---

[3] Like a defendant's rehabilitative efforts, the amount of time a defendant has served in prison is relevant to an analysis under § 3553(a)'s factors, which, again, the Court had no reason to reach in its opinion. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

11

under § 3553(a), *see id.* at 849 ("[H]aving already determined that a reduction in sentence is warranted, the court has no need to consider the defendant's argument that rehabilitation further justifies a reduction. Moreover, in this case at least, the question of rehabilitation is more appropriately considered in the context of a hearing under § 3553 to determine what sentence is appropriate[.]" (footnote omitted)).

Mr. Wood's reliance on *Young* is unpersuasive for several reasons. First, *Young* is not factually on point with Mr. Wood's case. Unlike the defendant in *Young*, Mr. Wood was not sentenced under the stacking provision of § 924(c). He is nearly thirty years younger than the defendant in *Young*. And at the time of the filing of his motion, he did not have any remarkable medical ailments to speak of. Second, Mr. Wood's view that the court in *Young* exercised its discretion more broadly than this Court is not indicative of clear error on this Court's part, especially in light of the factual distinctions between the two cases. *See United States v. Corp*, 668 F.3d 379, 393 (6th Cir. 2012) ("The mere fact that a defendant cites other cases in which courts determined certain defendants to be deserving of different sentences does not demonstrate abuse of discretion in the instant case." (citations omitted)).

And third, Mr. Wood does not effectively demonstrate that the Court committed clear error by ruling that the First Step Act does not retroactively apply to him and does not constitute an extraordinary and compelling reason for his release. As the Court observed in its opinion, the First Step Act "is largely forward-looking," meaning that only select provisions of the First Step Act are retroactive. *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019). Section 404 is one provision that is retroactive. *See id.* ("Section 404 of the Act makes retroactive only certain statutory changes pertaining to threshold crack cocaine weights triggering mandatory minimum sentences that were enacted under the Fair Sentencing Act of 2010." (citing § 404(b); *United*

12

*States v. Potter*, 927 F.3d 446, 455 (6th Cir. 2019))). It authorizes courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed," except "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act." § 404(b), (c), 132 Stat. at 5222. Section 404, though, does not apply to Mr. Wood because "the First Step Act did not alter the definition of 'felony drug offense[s]' that serve as qualifying convictions under 21 U.S.C. § 841(b)(1)(C)," the statute under which Mr. Wood was convicted. *Wiseman*, 932 F.3d 417.

Besides, Mr. Wood did not move for compassionate release under § 404 but under § 401. *See* [Def.'s Mot. Compassionate Release at 13 (arguing that "his prior offenses are no longer determined to be serious drug offenses or serious violent offenses, since the passage of the First Step Act")], *with* § 401(a)(1), 132 Stat. at 5220 (amending the definition of a "serious drug felony" under the Controlled Substances Act). The Sixth Circuit, roughly two months ago, reiterated in a published opinion that § 401 of the First Step Act does not apply retroactively to defendants who, like Mr. Wood, were sentenced before the First Step Act's passage:

> [A]s the district court pointed out, section 401 does not apply retroactively, applying only to defendants who had not yet been sentenced as of December 21, 2018, the date of the First Step Act's enactment. The district court declined to circumvent Congress's expressed intent and found no extraordinary and compelling reasons to warrant a sentence reduction. '[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced.' *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

*United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021) (citation omitted). And Mr. Wood, in fact, now acknowledges that "[it] might be true" that the First Step Act does not retroactively apply to him, [Def.'s Mot. Recons. at 3], and he concedes that "the[] changes [in the law under the First Step Act] do not directly affect him," [*id.* at 4]. He simply points to no binding authority

13

that compels the Court to conclude that it clearly erred in ruling that the First Step Act does not constitute an extraordinary and compelling reason for his release, and he is therefore not entitled to reconsideration.

### 3. Mr. Wood's Blood Pressure

Lastly, Mr. Wood recently filed a motion to supplement the record, in which he says that he has now been diagnosed with high blood pressure and is receiving medication to control it. [Def.'s Mot. Suppl., Doc. 74, at 1]. According to Mr. Wood, his high blood pressure "makes him vulnerable" to COVID-19, and he asks the Court to "take[] this recent development into consideration when ruling on his pending motion" for reconsideration. [*Id.*].[4] The United States, however, in responding in opposition to Mr. Wood's motion for reconsideration in May, filed medical records showing that he received the first dose of the Moderna vaccine in April. [Def.' Vaccination Record, Doc. 73-1, at 1]. By now, he has presumably received the second and final dose.

Because Mr. Wood has been inoculated with Moderna's vaccine, the Court cannot agree with his contention that he is at a high risk of severe illness from COVID-19. *See, e.g.*, *United States v. Jackson*, No. 3:11-cr-0038, 2021 WL 1721427, at *2 (M.D. Tenn. Apr. 30, 2021) ("The Pfizer vaccine is believed to be 95% effective in preventing COVID-19, and '[i]n clinical trial the vaccine was 100% effective in preventing severe disease' from the virus. For that reasons [sic], virtually every district court considering the issue, has determined that being fully vaccinated by the Pfizer shots (or the comparably effective Moderna shots) precludes a finding of an 'extraordinary and compelling' reason within the meaning of Section 3582(c)(1)(A)." (quotation

---

[4] The Court will construe Mr. Wood's argument in his motion to supplement as a request for the Court to reconsider its prior order based on "newly discovered evidence." *Leisure Caviar*, 616 F.3d at 615 (quotation omitted).

14

and footnote omitted)); *see also United States v. Roe*, No. 2:14-cr-229, 2021 WL 1711296, at *2 (S.D. Ohio Apr. 30, 2021) ("While Defendant has serious medical conditions that place him in a high-risk category in the absence of a vaccine, Defendant has received both does [sic] of the Pfizer vaccine. . . . [B]ecause Defendant is fully vaccinated and is now at little-to-no risk of severe COVID-19. . . there are no 'extraordinary and compelling reasons' justifying compassionate release." (citations omitted)); *United States v. Miller*, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen. . . . [T]he court does not know of a single confirmed death of a fully vaccinated individual from COVID-19." (citation omitted)); *United States v. Huffaker*, No. 3:16-CR-100, 2020 WL 5995499, at *3 (E.D. Tenn. Oct. 9, 2020) (noting that "medically managed serious health conditions, paired with a generalized fear of COVID-19, [fall] short of 'extraordinary and compelling reasons' justifying release" (citing *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020))). Mr. Wood's high blood pressure is therefore not an extraordinary and compelling reason for his release, and it offers the Court no basis to reconsider its decision.

## V.   Conclusion

In sum, the Court sympathizes with Mr. Wood's concerns, but he is not entitled to reconsideration of the Court's denial of his motion for compassionate release. His pro se motion to supplement the record [Doc. 74] is **GRANTED**, but his pro se motion for reconsideration [Doc. 69] is **DENIED**.

So ordered.

ENTER:

                                            s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE